IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>    vs.<br><br>HARLAN M. THOMPSON, DIANE C. THOMPSON, CAPITOL ONE BANK, DISCOVER BANK, MAPLE LEAF FUNDING,<br><br>         Defendants. | 8:13CV180<br><br>MEMORANDUM AND ORDER |

This matter is before the court on the United States' (hereinafter, "the Government's") motion for summary judgment, Filing No. 64; the government's motion for default judgment against Maple Leaf Funding, a "Pure" Trust (hereinafter, "Maple Leaf"), Filing No. 65; and the defendants Harlan and Diane Thompson's motion to deny the government's motion for summary judgment, Filing No. 99. This is an action to reduce to judgment a federal income tax deficiency owed by Harlan M. Thompson and Diane C. Thompson; to obtain a judicial determination that Maple Leaf Funding is the nominee of Harlan Thompson and Diane Thompson; and to foreclose the United States' federal tax liens encumbering certain real property in Dixon County, Nebraska. This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1340 and 1345 and 26 U.S.C. §§ 7402 and 7403.

In its complaint, the government alleges that the defendants Harlan and Diane Thompson have failed to pay taxes, interests and penalties for the years 2002, 2003,

2005, 2006 and 2007.[1] The Internal Revenue Service (IRS) wishes to foreclose on property owned by the Thompsons, in Dixon County, Nebraska.[2] Defendants Harlan Thompson, Diane Thompson, and Maple Leaf Funding, pro se, filed an answer generally denying the allegations and asserting several defenses.[3] Filing No. 9.

Defendants Thompsons reside in Wakefield, Nebraska. The IRS audited the Thompsons 2002 and 2003 income tax returns in 2005 and determined they underreported for those years. The Thompsons further failed to pay taxes for 2005, 2006 and 2007. Subsequently, the Thompsons filed what the IRS considered to be frivolous returns, and the Commissioner of the IRS assessed the Harlan Thompson penalties and interest as follows:

| Tax Year | Assessment Date | Amount Due as of October 1, 2014 |
|---|---|---|
| 2005 | 12/22/08<br>12/29/08<br>12/06/10 | $24,026.47 |
| 2006 | 12/22/08 | $12,231.93 |
| 2007 | 12/22/08 | $24,463.89 |
| | **Total:** | **$60,722.29** |

---

[1] As discussed hereinafter, the parties have stipulated regarding defendants Harlan Thompson and Diane Thompsons's tax year 2002 and 2003 tax liabilities, so those years are no longer at issue in this case. Filing No. 76.

[2] This property is located at 399 East 7th Street, Wakefield, Nebraska and is described as:

Lot 1, Turney's Addition located in the South half of the South half of the Southwest Quarter of Section 33, Township 27 North, Range 5, East of the 6th P.M, Dixon County, Nebraska.

Together with a perpetual easement providing ingress and egress over the East 25 feet of Lot 2 of said Turney's Addition as shown on the Plat and Dedication thereof.

[3] These defenses included failure to state a claim; lack of legislative jurisdiction; lack of personal jurisdiction; and failure to obtain a judgment prior to garnishment.

[Filing No. 88 at ECF p.5](#)

The IRS further assessed Diane Thompson penalties and interest as follows:

| Tax Year | Assessment Date | Amount Due as of October 1, 2014 |
|---|---|---|
| 2005 | 12/22/08<br>12/6/2010 | $5,691.97 |
| 2007 | 12/22/08 | $11,525.53 |
|  | **Total:** | **$17,217.50** |

[Filing No. 88 at ECF p.6](#)

As a result of the above, the government contends that federal tax liens against the Thompsons' property arose pursuant to 26 U.S.C. §§ 6321 and 6322 as of the dates of the assessments. The IRS filed federal tax liens on April 21, 2008, with regard to the Thompsons for 2005, 2006 and 2007 federal income tax liabilities; and on February 9, 2010, with regard to Diane Thompson for 2005, 2006, and 2007; and on July 8, 2010, with regard to Harlan Thompson's civil penalties for 2005, 2006 and 2007; and on Diane Thompson's 2007 liability on August 4, 2010; and on Harlan Thompson's 2005 liability on September 28, 2010. The IRS also filed civil penalties for 2005 for Harlan and Diane Thompson on March 24, 2011, all in Dixon County, Nebraska, Register of Deeds.

**DISCUSSION**

*A. Maple Leaf*

By order dated August 20, 2013, this court granted the motion to strike the answer filed by defendants Harlan M. Thompson and Diane C. Thompson to the extent

3

it was purportedly filed on behalf of defendant Maple Leaf Funding, because a trust cannot litigate its action in this forum without representation by licensed counsel. Filing No. 14, Order. Defendant Maple Leaf was ordered to obtain the services of counsel and have that attorney file an appearance on its behalf on or before September 6, 2013, and warned that in the absence of which the court would file an entry and/or judgment of default against it without further notice. *Id.* The Clerk of Court later filed an entry of default against Maple Leaf. Filing No. 21. The government now moves for default judgment against Maple Leaf, Filing No. 65. The court finds that the government's motion should be granted, as Maple Leaf did not obtain the services of counsel in this case as ordered by this Court. Such failure to comply with this Court's order is grounds for dismissal.

### B. Stipulation as to 2002 and 2003

On May 29, 2006, the IRS assessed Harlan and Diane Thompson with federal income tax deficiencies for tax years 2002 and 2003. See IRS Certificates of Assessment Filing No. 69-11, Ex. 59 at 2; Filing No. 69-12, Ex. 60 at 2. The parties have stipulated a partial settlement. This stipulation resolves the issue of the Thompsons' 2002 and 2003 federal income tax liabilities for purposes of the trial in this case. Under the stipulation, parties agreed to reduce the Thompsons' joint federal income tax liability for tax year 2002 to $10.00, plus penalties and interest, and the Thompson's joint federal income tax liability for tax year 2003 to $2,212.00, resulting in an outstanding balance of this liability, including penalties and interest, of $20.93 as of October 31, 2014, on the 2002 liability and $4,422.55 as of October 31, 2014, on the 2003 liability. The stipulation further provides that the court may adopt the stipulation

and enter judgment against the Thompsons and in favor of the United States in the revised amount of the Thompsons' 2002 and 2003 federal income tax liabilities, plus penalties and interest. Accordingly, the court finds judgment should be entered in favor of the government and against the Thompsons for the years 2002 and 2003, as set forth in the stipulation.

### C.  Remaining Tax Issues – Frivolous Penalty Assessments

The law permits the IRS to assess frivolous filing penalty claims if a taxpayer tries to (1) file what purports to be a tax return but, which (2) "does not contain information on which the substantial correctness of the self-assessment may be judged" or "contains information that on its face indicates that the self-assessment is substantially incorrect;" and where (3) the filing of the tax return "is based on a position which the [IRS] has identified as frivolous" or "reflects a desire to delay or impede the administration of Federal tax laws." 26 U.S.C. § 6702(a).

The government moves for summary judgment pursuant to Fed. R. Civ. P. 56. The government requests that this Court reduce to judgment defendant Harlan and Diane Thompson's joint and individual federal income tax debts and individual federal frivolous filing penalties, and authorize the United States to enforce its federal tax liens against the property at issue in this case. Defendants do not apparently contest the assessments. The only argument made by the Thompsons is that the frivolous filing penalties do not "contain the required supervisory signatures."[4] Further, defendants

---

[4] The section of the Internal Revenue Code that addresses the requirements for approving frivolous filing penalty assessments is 26 U.S.C. § 6751(b), which states that,

> In general. No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved (in writing) by

5

contend the supervisor must use pen and ink and not a rubber stamp. Defendants cite no authority for this contention.

The Second Circuit has stated that § 6751 "requires only personal approval in writing, not any particular form of signature or even any signature at all." Deyo v. United States, 296 F. App'x 157, 159 (2nd Cir. 2008) (unpublished). In affirming the taxpayer's penalty assessments, the Court declared "[i]t does not matter whether a rubber stamp was used to provide the signatures." Id. The Court has carefully reviewed the assessments.  The Court first finds the documents do in fact have a signature. *See* Thompson Ex. B-1, Filing No. 95-1, Forms 8278.[5]  Further the Court agrees that the IRS has met its burden of showing the § 6702(a) elements, and the Thompsons did not challenge any of these elements as inapplicable to them. The filings purported to be accurate 1040 tax returns; the self-assessed tax liability was not correct; the Thompsons asked for refunds for amounts they were not entitled to request; and in fact they were not owed any refunds and their claim was frivolous.  *See* Gov't. Exs. 30-39, Filing No. 69-1 through 69-10.  Accordingly, the Court finds the signature argument lacks merit, and the IRS has met its burden of alleging and producing evidence of its compliance with § 6702(a).  The plaintiffs offer no arguments or evidence in this regard,

---

the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate.

26 U.S.C. § 6751(b)(1).

[5] The only possible argument the plaintiffs might have concerns Ex. B-10, where there does not appear to be a signature.  However, The Court notes that on December 22, 2008, the IRS assessed Harlan Thompson with one penalty for $10,000 arising out of 2 frivolous filings.  The Forms 8278 were attached, and the first form B-9, bears the written approval of a supervisor.  These two penalty assessments occurred the same day, and if one reviews B-9 and B-10, there is clearly a supervisory approval for the penalty assessment.  *See* Filing No. 71-6 at 2; and Filing No. 95-1 at 9-10.

and thus the Court finds the government is entitled to the assessed penalties and interest.

### D. The funeral home/Wakefield property

The Thompsons purchased the Wakefield Property in 2001, and began operating a funeral home on this property. The Thompsons held all ownership interest in the property. The Thompsons signed off on all checks and banking documents and paid all property taxes and utilities. On or about May 29, 2006, the IRS assessed Harlan and Diane Thompson with the federal deficiencies for 2002 and 2003. On February 8, 2007, the Thompsons executed a quitclaim deed granting the Wakefield Property to Maple Leaf Funding. Filing No. 68-11, Ex. 22. Harlan Thompson admitted in his deposition that part of the reason he did this was to avoid creditors and the IRS, and he does not dispute that statement for purposes of the summary judgment motion. Harlan Thompson, Tr. 248:2-249:8, Filing No. 84-1 at ECF pp. 8-10. Harlan Thompson was named the general manager of Maple Leaf Funding.

The IRS assessed the Thompsons with $39,146.00 in tax due for both years and $15,010.09 in penalties and interest. (*Id.*) Then, on February 8, 2007, the Thompsons executed a quitclaim deed granting the Wakefield Property to Maple Leaf Funding, a "Pure" Trust, for $1.00. Filing No. 68-11, Quitclaim Deed, Ex. 22. After it was recorded, the quitclaim deed was returned to Harlan Thompson as the "General Manager" of Maple Leaf Funding. At the time they transferred the Wakefield Property to Maple Leaf Funding, the Thompsons estimate the property was worth between $200,000 and $210,000. The Quitclaim deed recites consideration of $1.00. Maple Leaf Funding was created at the Thompsons' direction by an entity called Mid-Atlantic Trustees and

Administrators ("Mid-Atlantic") that the Thompsons read about on the internet. Although Harlan Thompson wrote all the checks issued from the Maple Leaf Funding's bank account, he stamped the name of Michael Balice's or Ronald Ottaviano's signature on the checks. In fact, neither of them ever signed the checks or were involved in the operation of the Thompsons' funeral home.

The evidence supports a determination and the Court so finds the Thompsons created Maple Leaf Funding as an entity that would hold their property during their lifetimes that they believed would protect their property from creditors. The Court agrees with the government and finds that this was a sham attempt to defraud creditors.

The Court makes the following findings for the record:

a. The Court determines the Thompsons are the true and beneficial owners of the Property;

b. The Court determines the United States has valid and subsisting federal tax liens on the Property;

c. The Court will enter judgment foreclosing the federal tax liens on the Property described in this case, and order the Property to be sold and any person occupying the Property to leave and vacate the Property;

d. The Court will award to the United States its costs in this case;

e. The Court further finds that the conveyance of the Property from the Thompsons to Maple Leaf Funding was a fraudulent transfer with regard to the United States as a creditor of the Thompsons because Maple Leaf Funding is a sham entity without economic substance and because the transfer to Maple Leaf Funding was made

with the intent to hinder, delay, or defraud the United States as the Thompsons' creditor, and as a result constitutes a fraudulent conveyance;

f. The Court further finds that Capitol One has a valid judgment against the Thompsons, but that judgment is junior to the federal tax liens of the IRS; the Court also determines that Discover Bank is dormant, as it failed to execute on the judgment within 5 years after the date it was filed, and in any event is likewise inferior to the IRS lien. *See* stipulations, Filing No. 17, with regard to Capitol One Bank, and Filing No. 18 with regard to Discover Bank. The magistrate judge further determined that any distributions will be paid first to the IRS, and that Capitol One Bank and Discover Bank need not participate further in this case. Filing No. 19.

g. The Court determines that Maple Leaf Funding, a "Pure" Trust, is a sham trust that acts as either the nominee or alter ego of the defendant Thompsons, and is the fraudulent transferee of Thompsons' property.

**THEREFORE, IT IS ORDERED THAT:**

1. Pursuant to the stipulation entered into between the United States and Harlan M. Thompson and Diane C. Thompson, Filing No. 76, the Court hereby adopts the stipulation, Filing No. 76, and will enter judgment in favor of the United States, finding the joint federal income tax liability for tax year 2002 to be $10.00, plus penalties and interest, and the Thompson's joint federal income tax liability for tax year 2003 to $2,212.00, resulting in an outstanding balance of this liability, including penalties and interest, of $20.93 as of October 31, 2014, on the 2002 liability and $4,422.55 as of October 31, 2014, on the 2003 liability, with penalties and interest, if any, still accruing from October 31, 2014. The government shall provide an appropriate proposed

judgment outlining all amounts due under the stipulation to the Court within 10 days of the date of this Memorandum and Order.  The Court will then enter a separate judgment in accordance with this memorandum and order.

2.  The motion of the United States for default judgment against Maple Leaf Funding, a "Pure" Trust, Filing No. 65, is granted and Maple Leaf Funding, a "Pure" Trust, is dismissed from this lawsuit.

3.  The government's motion for summary judgment, Filing No. 64, is granted.

4.  The defendant Thompsons' motion to deny, Filing No. 99, is denied.

5.  With regard to the remaining tax issues, the government is ordered to provide the Court with a proposed judgment outlining all payments, penalties and interest that are due, consistent with this memorandum and order, within ten days of its filing.

Dated this 24th day of March, 2015.

BY THE COURT:

s/ Joseph F. Bataillon  
Senior United States District Judge